## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| FRIENDSHIP IP PROTECTION LLC, | |
| Plaintiff, | C.A. No. 7:25-cv-00577 |
| v. | **JURY TRIAL DEMANDED** |
| META PLATFORMS, INC., INSTAGRAM, LLC, and WHATSAPP LLC, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff Friendship IP Protection LLC ("Friendship IP") makes the following allegations against Meta Platforms, Inc. ("Meta'), Instagram, LLC ("Instagram"), and WhatsApp LLC ("WhatsApp") (collectively, "Defendants"). Friendship IP alleges infringement of United States Patent Nos. 8,725,796 (the "'796 patent"), 9,438,650 (the "'650 patent"), and 11,399,003 (the "'003 patent") (collectively, "Asserted Patents"), and states as follows:

## PARTIES

1.      Plaintiff Friendship IP is a Texas limited liability company whose principal place of business is in Florida.

2.      Defendant Meta is a Delaware corporation with a principal place of business at 607 W 3rd Street, Austin, Texas, 78701.

3.      Defendant Instagram is a Delaware limited liability company with a principal place of business at 607 W 3rd Street, Austin, Texas, 78701. Defendant Instagram is a wholly owned subsidiary of Meta.

4.     Defendant WhatsApp is a Delaware limited liability company with a principal place of business at 607 W 3rd Street, Austin, Texas, 78701. Defendant WhatsApp is a wholly owned subsidiary of Meta.

5.     Meta states that it operates its business primarily through its subsidiaries, which Meta terms its "Family of Apps." Meta's Family of Apps includes Facebook, Instagram, Messenger, Threads, and WhatsApp.

6.     Meta also states that it generates "substantially all" of its revenue "from selling advertising placements" on its Family of Apps.

7.     On information and belief, Meta exercises complete dominion and control over its subsidiaries. This also is demonstrated by Meta's actions and statements, including the fact that Meta recruits employees for Facebook, Instagram, and WhatsApp.

8.     Each of the Defendants directly and indirectly develops, designs, distributes, markets, offers to sell, and sells infringing products and services in the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with the Facebook.com and Instagram.com websites, and the WhatsApp and Threads applications, among others.

9.     Defendants have been and are acting in concert, and are otherwise liable jointly, severally, or otherwise for relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to making, using, selling, offering for sale, or otherwise distributing the Facebook.com and Instagram.com websites, and the WhatsApp and Threads applications, among others.

10.    In addition, this action involves concerted actions and questions of law and fact common to all Defendants. For example, as of 2014, all Instagram-specific software is run on servers in Meta's data centers.

## JURISDICTION AND VENUE

11.    This action arises under the patent laws of the United States, Title 35 of the United States Code.

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.    This Court has personal jurisdiction over Defendants because, directly or through intermediaries, they have committed acts within Texas giving rise to this action and/or have established minimum contacts with Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

14.    For example, just two months ago, Meta touted its extensive contacts with Texas when it announced the construction of a new data center in El Paso—its third in this state and its second in this District. In its announcement, Meta claimed that it "has invested over $10 billion in Texas and has more than 2,500 full-time employees across the state between our data centers, offices, and research lab."

15.    In addition, during the infringing period, Defendants have placed one or more infringing products into the stream of commerce through the internet with the knowledge and/or understanding that such products were being utilized for sale in Texas.

16.    Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(d) because (1) Defendants have done and continue to do business in this District; (2) Defendants have a regular and established place of business in this District; and (3) Defendants have committed and continue to commit acts of patent infringement in this District by making, using, selling, or offering

to sell products that infringe one or more claims of the Asserted Patents.

17.    Each Defendant maintains regular and established places of business in this District, including at 607 W 3rd Street, Austin, Texas, 78701, an office with nearly 2,000 Meta employees. Below is an image of that location.



Source: Austin Business Journal

18.    Upon information and belief, work done at this location includes work related to software engineering and the development of Defendants' digital social relationship networks across Meta's Family of Apps, including Facebook, Instagram, and WhatsApp.

19.    Defendants are expanding their presence in this District, as evidenced by the 90 Austin-based job vacancies that Meta is currently advertising on its own behalf and on behalf of Facebook, Instagram, and WhatsApp.

20.     As shown below, such vacancies at Meta include "Systems Software Engineer," among other engineering roles.



21.     Such vacancies also include "Data Scientist (Technical Leadership)" at Facebook, Instagram, and WhatsApp.



22.     Further, Meta currently operates a data center in this District in Temple, Texas. Meta also recently announced that it will expand its presence in this District by constructing another data center in El Paso, Texas. Meta also has a data center in Fort Worth, Texas.

23.     Additionally, Defendants have placed and/or have contributed to placing infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be used and sold in the United States, including in the Western District of Texas. For example, on information and belief, with the authorization of Defendants, each of the Accused Platforms and Accused Functionalities has been made available to, and used by, one or more persons in the Western District of Texas.

24.     On information and belief, Defendants have derived substantial revenues from infringing acts in the Western District of Texas, including from the use and sale of infringing products.

## THE ASSERTED PATENTS

25.     This lawsuit asserts causes of action for infringement of the '796, '650, and '003 Patents.

26.     The patents and claims at issue were conceived and developed by Dr. F. David Serena, an experienced independent computer scientist who earned an AB in Physics from Harvard College in 1986 and a PhD in Computer Sciences from the University of California, Santa Barbara, in 2002.

27.     Dr. Serena's academic publications examined the computational complexity of finding multiple, non-interfering optimal paths in structured network topologies.

28.     Building on his robust academic experience, Dr. Serena pioneered technological advances in social networking. Dr. Serena's inventions have transformed the field of social networking by replacing basic connection counts with sophisticated relationship dynamics, in turn revolutionizing users' personal and business capabilities.

29.     For instance, Dr. Serena invented a method for facilitating digital value exchange— including, but not limited to, rewards and content sharing—by improving connections through

efficient relationship characterization and through strategic networking stratagems based on social graphs.

30.    In addition, Dr. Serena invented a method for harnessing relationship networks using embedded qualitative insights, such as graph algorithms that identify optimal pathways and multipath reachability.

31.    Because of Dr. Serena's inventions, social network users and providers now enjoy previously unknown insights into relationships and, in turn, benefit from improved access to digital value exchange. For example, Dr. Serena's landmark inventions allow social network users and providers to deploy qualitative relationship profiles instead of generic quantitative metrics. Furthermore, Dr. Serena's inventions allow social network providers to define relationship quality as a basis for conditional digital value exchanges and, in so doing, create new engagement and revenue opportunities.

32.    Recognizing that these cutting-edge developments would transform social networking for users and providers alike, Dr. Serena began protecting his inventions through the patent process in 2011.

33.    For example, on July 7, 2011, Dr. Serena filed application No. 13/177,856 with the United States Patent and Trademark Office ("PTO"). That application issued on May 13, 2014, as the '796 Patent, which is entitled "Relationship Networks having Link Quality Metrics with Inference and Concomitant Digital Value Exchange." A true and correct copy of the '796 Patent is attached as Exhibit 1.

34.    The '796 Patent generally recites methods, including ones that relate to operating a digital social relationship network that automatically infers link quality metrics between participants and then employs digital value exchange based on such metrics.

35.    Additionally, on May 12, 2014, Dr. Serena filed application No. 14/275,328 with the PTO as a continuation of application No. 13/177,856. Application No. 14/275,328 issued on September 6, 2016, as the '650 Patent, which also is entitled "Relationship Networks having Link Quality Metrics with Inference and Concomitant Digital Value Exchange." A true and correct copy of the '650 Patent is attached as Exhibit 2.

36.    The '650 Patent generally recites methods, including ones that relate to presenting a viewable display of digital social network relationships between individuals or groups that can facilitate an exchange of digital value.

37.    Additionally, on December 28, 2020, Dr. Serena filed application No. 17/135,534 with the PTO. It ultimately claims priority to application No. 13/221,893, which Dr. Serena filed on August 30, 2011, and provisional application No. 61/511,983, which Dr. Serena filed on July 26, 2011. Application No. 17/135,534 issued on July 26, 2022, as the '003 Patent, which is entitled "Social Network Graph Inference and Aggregation with Portability, Protected Shared Content, and Application Programs Spanning Multiple Social Networks." A true and correct copy of the '003 Patent is attached as Exhibit 3.

38.    The '003 Patent generally recites methods and apparatuses, including ones that allow users of at least one digital social network to identify, establish, and graph connections across a second digital social network.

39.    Friendship IP owns all substantial rights to the Asserted Patents, including the right to sue and recover damages for all infringement thereof. Prior to October 13, 2025, Friendship IP operated as SIM IP 6 LLC.

40.    Defendants are not licensed under the Asserted Patents, either expressly or implicitly, nor do Defendants enjoy or benefit from any rights in or to the Asserted Patents whatsoever.

## NOTICE

41.    Defendants are familiar with the Asserted Patents.

42.    First, Defendants' own actions demonstrate that they had notice of the '796 Patent by at least May 14, 2014.

43.    For example, the published application that ultimately issued as the '796 Patent (United States Publication No. 2013/0013667 A1) was cited by the USPTO in two May 14, 2014 Office Actions regarding Meta application No. 13/608,943.

44.    Further, the published application that ultimately issued as the '796 Patent (United States Publication No. 2013/0013667 A1) was cited by the USPTO on February 23, 2015, in a Final Rejection of Meta application No. 13/715,636. It also was cited in a second Office Action regarding application No. 13/715,636 dated the same day.

45.    Additionally, the '796 Patent was cited as a Reference in several of Meta's patents, including in United States Patent No. 8,825,764 (which issued on September 2, 2014); in United States Patent No. 9,165,069 (which issued on October 20, 2015); in United States Patent No. 9,699,187 (which issued on July 4, 2017); and in United States Patent No. 10,380,774 (which issued on August 13, 2019).

46.    Defendants' own actions demonstrate that they also had notice of the '003 Patent family by at least January 12, 2015.

47.    For example, the '003 Patent claims priority to application No. 13/221,893, which was published as United States Publication No. 2013/0031171 and ultimately issued as United

States Patent No. 9,536,268. And United States Publication No. 2013/0031171 was cited by the USPTO in an Office Action regarding Meta application No. 13/646,360.

48.     Additionally, United States Publication No. 2013/0031171 was cited in several of Meta's patents, including in United States Patent No. 9,124,545 (which issued on September 1, 2015), and in United States Patent No. 9,661,086 (which issued on May 23, 2017).

## COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 8,725,796

49.     Friendship IP repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

50.     Defendants have directly infringed, and continue to directly infringe, the '796 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, one or more online platforms that perform or are capable of performing at least Claim 1 of the '796 Patent literally or under the doctrine of equivalents (hereafter the "'796 Accused Functionalities").

51.     Additionally, Defendants have violated 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to the infringement of others with knowledge of, and intent to cause infringement of, the '796 Patent.

52.     At minimum, such '796 Accused Functionalities include the computing devices and software utilized by Defendants to operate online platforms that embed and present displays of digital social media relationship networks.[1]

---

[1] This description, and those thereafter, are illustrative and not intended to be an exhaustive or limiting explanation of every manner in which each Accused Functionality and each Accused Platform infringes each Asserted Patent. Further, the identified components and functionalities are representative of all components and functionalities present in each Accused Functionality and each Accused Platform.

53.     For example, Claim 1 of the '796 Patent recites "[a] method of operating a digital social relationship network, comprising the steps of: storing in a social network server computer a digital social network representation corresponding to a graph having nodes representing individuals or groups and links representing actual social relationships between the individuals or groups; obtaining relationship-dependent information corresponding to a plurality of links of the graph; embedding the relationship-dependent information in the digital social network representation stored in the social network server computer; interactively presenting to a user of a client computer connected to the social network server computer a user-viewable display of a social network of the individuals or groups and the social relationships between the individuals or groups; receiving, at the social network server computer, input from the user of the client computer selecting from the user-viewable display of the social network and the social relationships, at least one of the social relationships between individuals or groups other than the user; and presenting to the user of the client computer a user-viewable social relationship profile page, specific to the social relationship selected by the user, comprising a user-viewable display of the relationship-dependent information corresponding to the social relationship selected by the user of the client computer, wherein the relationship-dependent information of the social relationship profile page comprises postings to the social relationship profile page by at least one of the individuals or groups participating in the social relationship corresponding to the social relationship profile page, a user-viewable display of the postings being viewable by the user of the client computer through the presentation of the social relationship profile page to the user, wherein the step of presenting to the user of the client computer the social relationship profile page comprises presenting a web page corresponding to the social relationship selected by the user of the client computer."

54.    The '796 Accused Functionalities each are configured to perform, and are used by Defendants to perform, a method of operating a digital social relationship network that performs each of these elements.

55.    In particular, and as depicted below, evidence from Defendants' Accused Platforms, along with Meta's own developer/API resources, show that such limitations are met.

56.    For example, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, "[a] method of operating a digital social relationship network" comprising each of the below steps.

57.    First, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "storing in a social network server computer a digital social network representation corresponding to a graph having nodes representing individuals or groups and links representing actual social relationships between the individuals or groups" by collecting and storing on one or more servers a representation of social relationships comprising nodes, including as shown below:[2]

---

[2] For emphasis, Friendship IP has underlined, or otherwise highlighted, certain text in the below image and those thereafter.



58. Additionally, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "obtaining relationship-dependent information corresponding to a plurality of links of the graph," including as shown below:

- **Networks and connections.** We collect information about the people, Pages, accounts, hashtags and groups you are connected to and how you interact with them across our Products, such as people you communicate with the most or groups you are part of. We also collect contact information if you choose to upload, sync or import it from a device (such as an address book or call log or SMS log history), which we use for things like helping you and others find people you may know and for the other purposes listed below.

- **Your usage.** We collect information about how you use our Products, such as the types of content you view or engage with; the features you use; the actions you take; the people or accounts you interact with; and the time, frequency and duration of your activities. For example, we log when you're using and have last used our Products, and what posts, videos and other content you view on our Products. We also collect information about how you use features like our camera.

- **Information about transactions made on our Products.** If you use our Products for purchases or other financial transactions (such as when you make a purchase in a game or make a donation), we collect information about the purchase or transaction. This includes payment information, such as your credit or debit card number and other card information; other account and authentication information; and billing, shipping and contact details.

59.    Additionally, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "embedding the relationship-dependent information in the digital social network representation stored in the social network server computer," including as shown below.



This simple example shows a subgraph of objects and associations that is created in TAO after Alice checks in at the Golden Gate Bridge and tags Bob there, while Cathy comments on the check-in and David likes it. Every data item, such as a user, check-in, or comment, is represented by a typed object containing a dictionary of named fields. Relationships between objects, such as "liked by" or "friend of," are represented by typed edges (associations) grouped in association lists by their origin. Multiple associations may connect the same pair of objects as long as the types of all those associations are distinct. Together objects and associations form a labeled directed multigraph.

60.     Additionally, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "interactively presenting to a user of a client computer connected to the social network server computer a user-viewable display of a social network of the individuals or groups and the social relationships between the individuals or groups," including as shown below.



61.    Additionally, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "receiving, at the social network server computer, input from the user of the client computer selecting from the user-viewable display of the social network and the social relationships, at least one of the social relationships between individuals or groups other than the user," including as shown below:



62.    Additionally, each of the '796 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "presenting to the user of the client computer a

user-viewable social relationship profile page, specific to the social relationship selected by the user, comprising a user-viewable display of the relationship-dependent information corresponding to the social relationship selected by the user of the client computer, wherein the relationship-dependent information of the social relationship profile page comprises postings to the social relationship profile page by at least one of the individuals or groups participating in the social relationship corresponding to the social relationship profile page, a user-viewable display of the postings being viewable by the user of the client computer through the presentation of the social relationship profile page to the user, wherein the step of presenting to the user of the client computer the social relationship profile page comprises presenting a web page corresponding to the social relationship selected by the user of the client computer," including as shown below:



63.     Defendants thus have directly infringed, and continue to directly infringe, each element of at least Claim 1 of the '796 Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, the '796 Accused Functionalities before the expiration date of the '796 Patent.

64.    In addition, Defendants have indirectly infringed, and continue to indirectly infringe, Claim 1 of the '796 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties in the United States through the dissemination of the '796 Accused Functionalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts would result in the direct infringement of the '796 Patent.

65.    For example, Defendants took active steps to encourage content providers and other customers to use the '796 Accused Platforms in the United States in a manner that would directly infringe each element of at least Claim 1 of the '796 Patent as described above, including by marketing its functionality and creating and distributing various guides for its use. This includes, but is not limited to, Meta's Graph API manual, which is "named after"—and concerned with— "the idea of a 'social graph'—a representation of the information on Facebook."[3]

66.    In short, Defendants actively induced, and continue to actively induce, third party providers to directly infringe the '796 Patent by enabling its '796 Accused Platforms to perform the method recited in Claim 1 prior to the expiration of the '796 Patent and by, among other things, creating and distributing various resources that train third party providers to use the '796 Accused Platforms in an infringing manner.

67.    Further, Defendants also have indirectly infringed, and continue to indirectly infringe, at least Claim 1 of the '796 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing

---

[3] Graph API Overview, https://developers.facebook.com/docs/graph-api/overview.

a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

68.     For example, the components of the Accused Functionalities are a material and substantial part of the invention claimed by the '796 Patent and are designed for a use that is both patented and infringing. Further, there are no substantial non-infringing uses.

69.     Further, Defendants took such active steps after receiving notice of the '796 Patent and their infringement of it, which occurred at least as early as May 14, 2014, as described above.

70.     Further, Defendants' post-notice infringement of the '796 Patent was willful. As detailed above, Defendants were made aware of the '796 Patent and their infringement of it. Nevertheless, without authorization, Defendants continued to infringe the '796 Patent and also encouraged others to infringe the '796 Patent, as described above, including by marketing and/or distributing the '796 Accused Functionalities in the United States.

71.     Defendants' acts of infringement have caused damage to Friendship IP as a result of such wrongful acts, and Friendship IP is entitled to recover from Defendants such damages in an amount to be proven at trial.

72.     Further, Friendship IP states that it is entitled to all damages to which it otherwise is entitled because, among other things, the '796 Patent is a methods patent that is not subject to 35 U.S.C. § 287's marking requirement.

### COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 9,438,650

73.     Friendship IP repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

74.     Defendants have directly infringed, and continue to directly infringe, the '650 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the

United States, and/or importing into the United States, without authorization, one or more online platforms that perform or are capable of performing at least Claim 1 of the '650 Patent literally or under the doctrine of equivalents (hereafter the "'650 Accused Functionalities").

75.     Additionally, Defendants have violated 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to the infringement of others with knowledge of, and intent to cause infringement of, the '650 Patent.

76.     At minimum, such '650 Accused Functionalities include those computing devices and software utilized by Defendants to operate a client computer connected to a digital social relationship network.

77.     For example, Claim 1 of the '650 Patent recites "[a] method of operating a client computer connected to a digital social relationship network, comprising the steps of: interactively presenting to a user of the client computer a user-viewable display of a social network of individuals or groups and actual social relationships between the individuals or groups, the client computer being connected to a social network server computer that stores a digital social network representation corresponding to a graph having nodes representing the individuals or groups and links representing the actual social relationships between the individuals or groups, the digital social network representation having embedded relationship-dependent information corresponding to a plurality of links of the graph; sending, to the social network server computer, input from the user of the client computer selecting, from the user-viewable display of the social network and the social relationships, at least one of the social relationships between individuals or groups other than the user; and presenting to the user of the client computer a user-viewable social relationship profile, specific to the social relationship selected by the user, comprising a user-viewable display of the relationship-dependent information corresponding to the social

relationship selected by the user of the client computer, wherein the relationship-dependent information of the social relationship profile comprises postings entered into the social relationship profile by at least one of the individuals or groups participating in the social relationship corresponding to the social relationship profile, a user-viewable display of the postings being viewable by the user of the client computer through the presentation of the social relationship profile to the user."

78.    The '650 Accused Functionalities each are configured to perform, and are used by Defendants to perform, a method of operating a client computer connected to a digital social relationship network that performs each of these elements.

79.    In particular, evidence from Defendants' Accused Platforms, along with Meta's own developer/API resources, show that such limitations are met.

80.    For example, each of the '650 Accused Functionalities are configured to perform, and are used by Defendants to perform, "[a] method of operating a client computer connected to a digital social relationship network" comprising each of the below steps.

81.    First, each of the '650 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "interactively presenting to a user of the client computer a user-viewable display of a social network of individuals or groups and actual social relationships between the individuals or groups, the client computer being connected to a social network server computer that stores a digital social network representation corresponding to a graph having nodes representing the individuals or groups and links representing the actual social relationships between the individuals or groups, the digital social network representation having embedded relationship-dependent information corresponding to a plurality of links of the graph[.]"

82.    For example, users of Defendants' platforms, including Facebook, are presented with displays of both a social network and, moreover, actual relationships within that network, including as shown below.



83.    Additionally, such representations are stored on Meta's servers as reflected in a graph that identifies and links those actual relationships, including as shown below. Further, when such a digital representation is presented to the user, it contains information corresponding to the plurality of links of that graph.



A Crash-Course in Graph Structure

The Facebook graph is the collection of entities and their relationships on Facebook. The entities are the nodes and the relationships are the edges. One way to think of this is if the graph were represented by language, the nodes would be the nouns and the edges would be the verbs. Every user, page, place, photo, post, etc. are nodes in this graph. Edges between nodes represent friendships, check-ins, tags, relationships, ownership, attributes, etc.

Both nodes and edges have metadata associated with them. For example, the node corresponding to me will have my name, my birthday, etc. and the node corresponding to the Page Breville will have its title and description as metadata. Nodes in the graph are identified by a unique number called the *fbid*.

The Facebook graph contains social information, such as friendships and likes, in addition to information relevant for everybody–e.g., the relationship between Queen Elizabeth and George VI and the history of Star Wars. This blend of general information and social context in a single graph makes Facebook a rich source of content, and a unique data set.

84.    Additionally, each of the '650 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "sending, to the social network server computer, input from the user of the client computer selecting, from the user-viewable display of the social network and the social relationships, at least one of the social relationships between individuals or groups other than the user," including as shown below.



85.    Additionally, each of the '650 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "presenting to the user of the client computer a user-viewable social relationship profile, specific to the social relationship selected by the user, comprising a user-viewable display of the relationship-dependent information corresponding to the social relationship selected by the user of the client computer, wherein the relationship-dependent information of the social relationship profile comprises postings entered into the social relationship profile by at least one of the individuals or groups participating in the social relationship corresponding to the social relationship profile, a user-viewable display of the postings being viewable by the user of the client computer through the presentation of the social relationship profile to the user," including as shown below.



86.     Defendants thus have directly infringed, and continue to directly infringe, each element of at least Claim 1 of the '650 Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, the '650 Accused Functionalities before the expiration date of the '650 Patent.

87.     In addition, Defendants have indirectly infringed, and continue to indirectly infringe, Claim 1 of the '650 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties in the United States through the dissemination of the '650 Accused Functionalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts would result in the direct infringement of the '650 Patent. This includes, but is not limited

to, Meta's Graph API manual, which is "named after"—and concerned with—"the idea of a 'social graph'—a representation of the information on Facebook."[4]

88.    In short, Defendants actively induced, and continue to actively induce, third party providers to directly infringe the '650 Patent by enabling its '650 Accused Platforms to perform the method recited in Claim 1 prior to the expiration of the '650 Patent and by, among other things, creating and distributing various resources that train third party providers to use the '650 Accused Platforms in an infringing manner.

89.    Further, Defendants also have indirectly infringed, and continue to indirectly infringe, at least Claim 1 of the '650 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

90.    For example, the components of the Accused Functionalities are a material and substantial part of the invention claimed by the '650 Patent and are designed for a use that is both patented and infringing. Further, there are no substantial non-infringing uses.

91.    Further, Defendants took such active steps after receiving notice of the '650 Patent and its infringement of it, including after receiving notice of the '650 Patent family, as described above, and after the filing of this Complaint.

92.    Further, Defendants' post-notice infringement of the '650 Patent was willful. As detailed above, Defendants were made aware of the '650 Patent and their infringement of it.

---

[4] Graph API Overview, https://developers.facebook.com/docs/graph-api/overview.

Nevertheless, without authorization, Defendants continued to infringe the '650 Patent and also encouraged others to infringe the '650 Patent, as described above, including by marketing and/or distributing the '650 Accused Functionalities in the United States.

93.    Defendants' acts of infringement have caused damage to Friendship IP as a result of such wrongful acts, and Friendship IP is entitled to recover from Defendants such damages in an amount to be proven at trial.

94.    Further, Friendship IP states that it is entitled to all damages to which it otherwise is entitled because, among other things, the '650 Patent is a methods patent that is not subject to 35 U.S.C. § 287's marking requirement.

## COUNT 3 – INFRINGEMENT OF U.S. PATENT NO. 11,399,003

95.    Friendship IP repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

96.    Defendants have directly infringed, and continue to directly infringe, the '003 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, one or more online platforms that perform or are capable of performing at least Claim 1 of the '003 Patent literally or under the doctrine of equivalents (hereafter the "'003 Accused Functionalities").

97.    Additionally, Defendants have violated 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to the infringement of others with knowledge of, and intent to cause infringement of, the '003 Patent.

98.    At minimum, such '003 Accused Functionalities include those computing devices and software utilized by Defendants to operate computer-based digital social networks that allow certain users of one digital social network to participate in a second digital social network.

99.    For example, Claim 1 recites "[a] method of operating computer-based digital social networks, comprising the steps of: obtaining knowing consent, from a plurality of users of at least one first digital social network, to participation in an operational second digital social network, enabling other individuals in the at least one first digital social network, with whom respective ones of the plurality of users are associated in the at least one first digital social network, to be invited to participation in the second digital social network by the respective ones of the plurality of users, the other individuals being associated with the respective ones of the plurality of users by link information between each of the respective ones of the plurality of users and the other individuals in the at least one first digital social network, obtaining knowing consent, from at least some of the other individuals in the at least one first digital social network with whom respective ones of the plurality of users are associated by the link information, to participation in the second digital social network, storing the second digital social network, and enabling access thereto, on at least one computerized digital data processing system, the second digital social network corresponding to a graph having nodes representing the plurality of users and the other individuals, and having links between the nodes representing social relationships, wherein the other individuals are enabled to identify friends of a friend from the first digital social network in the second digital social network, and enabling digital social networking between the plurality of users and the other individuals, using a respective plurality of computerized digital data processing systems, within the second digital social network, apart from the at least one first digital social network, by enabling shared content within the second digital social network between the plurality of users and the other individuals, and by enabling links within the second digital social network to be formed between nodes of the graph of the second social network that represent ones of the users and other individuals for whom content sharing is enabled within the second digital social

network with other ones of the users and other individuals, such that the graph has a structure that changes state when the links are formed."

100.    For example, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, "[a] method for operating computer-based digital social networks" comprising each of the below steps.

101.    In particular, and as depicted below, evidence from Defendants' Accused Platforms, along with Meta's own developer/API resources, show that such limitations are met.

102.    First, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "obtaining knowing consent, from a plurality of users of at least one first digital social network, to participation in an operational second digital social network," including as shown below, with a digital social network such as Facebook, Instagram, Threads, or Meta Horizon functioning as the first (exemplary) digital social network and another of those examples functioning as the second (exemplary) digital social network:



103.    Additionally, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "enabling other individuals in the at least one first digital social network, with whom respective ones of the plurality of users are associated in the at least one first digital social network, to be invited to participation in the second digital social network by the respective ones of the plurality of users, the other individuals being associated with the respective ones of the plurality of users by link information between each of the respective ones of the plurality of users and the other individuals in the at least one first digital social network," including as shown below.

- ■ **Following people on Meta Horizon**. You'll be able to:
  - ■ Automatically send follow requests to your Facebook friends or people you follow on Instagram who also have Meta Horizon profiles and have chosen to show their Facebook and/or Instagram profiles with their Meta Horizon profile.
  - ■ Note: You can only enable this connected experience if you have a Meta account.

104.    Additionally, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "obtaining knowing consent, from at least some of the other individuals in the at least one first digital social network with whom respective ones of the plurality of users are associated by the link information, to participation in the second digital social network," including as shown below:



105.    Additionally, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "storing the second digital social network, and enabling access thereto, on at least one computerized digital data processing system, the second digital social network corresponding to a graph having nodes representing the plurality of users and the other individuals, and having links between the nodes representing social relationships, wherein the other individuals are enabled to identify friends of a friend from the first digital social network in the second digital social network," including as shown below.



A Crash-Course in Graph Structure

The Facebook graph is the collection of entities and their relationships on Facebook. The entities are the nodes and the relationships are the edges. One way to think of this is if the graph were represented by language, the nodes would be the nouns and the edges would be the verbs. Every user, page, place, photo, post, etc. are nodes in this graph. Edges between nodes represent friendships, check-ins, tags, relationships, ownership, attributes, etc.

Both nodes and edges have metadata associated with them. For example, the node corresponding to me will have my name, my birthday, etc. and the node corresponding to the Page Breville will have its title and description as metadata. Nodes in the graph are identified by a unique number called the fbid.

The Facebook graph contains social information, such as friendships and likes, in addition to information relevant for everybody—e.g., the relationship between Queen Elizabeth and George VI and the history of Star Wars. This blend of general information and social context in a single graph makes Facebook a rich source of content, and a unique data set.

106.    Additionally, each of the '003 Accused Functionalities are configured to perform, and are used by Defendants to perform, the step of "enabling digital social networking between the plurality of users and the other individuals, using a respective plurality of computerized digital data processing systems, within the second digital social network, apart from the at least one first digital social network, by enabling shared content within the second digital social network between the plurality of users and the other individuals, and by enabling links within the second digital social network to be formed between nodes of the graph of the second social network that represent ones of the users and other individuals for whom content sharing is enabled within the second digital social network with other ones of the users and other individuals, such that the graph has a structure that changes state when the links are formed," including as shown below.

> For every association type a so-called inverse type can be specified. Whenever an edge of the direct type is created or deleted between objects with unique IDs id1 and id2, TAO will automatically create or delete an edge of the corresponding inverse type in the opposite direction (id2 to id1). The intent is to help the application programmer maintain referential integrity for relationships that are naturally mutual, like friendship, or where support for graph traversal in both directions is performance critical, as for example in
>
> Associations are created and deleted as individual edges. If the association type has an inverse type defined, an inverse edge is created automatically. The API helps the data store exploit the creation-time locality of workload by requiring every association to have a special time attribute that is commonly used to represent the creation time of association. TAO uses the association time value to optimize the working set in cache and to improve hit rate.

107.    Defendants thus have directly infringed, and continue to directly infringe, each element of at least Claim 1 of the '003 Patent by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, the '003 Accused Functionalities before the expiration date of the '003 Patent.

108.    In addition, Defendants have indirectly infringed, and continue to indirectly infringe, Claim 1 of the '003 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties in the United States through the dissemination of the '003 Accused Functionalities and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts would result in the direct infringement of the '003 Patent. This includes, but is not limited to, Meta's Graph API manual, which is "named after"—and concerned with—"the idea of a 'social graph'—a representation of the information on Facebook."[5]

---

[5] Graph API Overview, https://developers.facebook.com/docs/graph-api/overview.

109.    In short, Defendants actively induced, and continue to actively induce, third party providers to directly infringe the '003 Patent by enabling its '003 Accused Platforms to perform the method recited in Claim 1 prior to the expiration of the '003 Patent and by, among other things, creating and distributing various resources that train third party providers to use the '003 Accused Platforms in an infringing manner.

110.    Further, Defendants also have indirectly infringed, and continue to indirectly infringe, at least Claim 1 of the '003 Patent in violation of 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

111.    For example, the components of the Accused Functionalities are a material and substantial part of the invention claimed by the '003 Patent and are designed for a use that is both patented and infringing. Further, there are no substantial non-infringing uses.

112.    Further, Defendants took such active steps after receiving notice of the '003 Patent and its infringement of it, including after receiving notice of the '003 Patent family, as described above, and after the filing of this Complaint.

113.    Defendants' post-notice infringement of the '003 Patent was willful. As detailed above, Defendants were made aware of the '003 Patent and their infringement of it. Nevertheless, without authorization, Defendants continued to infringe the '003 Patent and also encouraged others to infringe the '003 Patent, as described above, including by marketing and/or distributing the '003 Accused Functionalities in the United States.

114.    Defendants' acts of infringement have caused damage to Friendship IP as a result of such wrongful acts, and Friendship IP is entitled to recover from Defendants such damages in an amount to be proven at trial.

115.    Further, Friendship IP states that it is entitled to all damages to which it otherwise is entitled because, among other things, the '003 Patent is a methods patent that is not subject to 35 U.S.C. § 287's marking requirement.

## DEMAND FOR JURY TRIAL

116.    Plaintiff hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring that Defendants have infringed, and continue to infringe, the '796 Patent;

B.    Declaring that Defendants have infringed, and continue to infringe, the '650 Patent;

C.    Declaring that Defendants have infringed, and continue to infringe, the '003 Patent;

D.    Awarding damages to Friendship IP in an amount no less than a reasonable royalty for Defendants' past and ongoing infringement of the '796 Patent, together with enhanced damages pursuant to 35 U.S.C. § 284, and prejudgment and post-judgment interest without any limitation by 35 U.S.C § 287;

E.    Awarding damages to Friendship IP in an amount no less than a reasonable royalty for Defendants' past and ongoing infringement of the '650 Patent, together with enhanced damages pursuant to 35 U.S.C. § 284, and prejudgment and post-judgment interest without any limitation by 35 U.S.C § 287;

F.    Awarding damages to Friendship IP in an amount no less than a reasonable royalty for Defendants' past and ongoing infringement of the'003 Patent, together with enhanced damages pursuant to 35 U.S.C. § 284, and prejudgment and post-judgment interest without any limitation

by 35 U.S.C § 287;

      G.     Awarding Friendship IP its attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

      H.     Awarding all other costs and relief that the Court deems just and proper.


Date: December 18, 2025              Respectfully submitted,

                      */s/ Andres C. Healy*
                      Andres C. Healy
                      Washington State Bar No. 45578
                      ahealy@susmangodfrey.com
                      Matthew R. Berry
                      Washington State Bar No. 37364
                      mberry@susmangodfrey.com
                      SUSMAN GODFREY L.L.P.
                      401 Union Street Suite 3000
                      Seattle, WA 98101-2683
                      Telephone: (206) 505-3880
                      Facsimile: (206) 516-3883

                      Tyler Alabanza-Behard*
                      Texas Bar No. 24136695
                      talabanza-behard@susmangodfrey.com
                      SUSMAN GODFREY L.L.P.
                      1000 Louisiana Street, Suite 5100
                      Houston, TX 77002
                      Telephone: (713) 651-9366
                      Facsimile: (713) 654-6666

                      *Attorneys for Friendship IP Protection, LLC*

                      *Application for admission pending