IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| FRIENDSHIP IP PROTECTION LLC, | § § § | C.A. No. 7:25-cv-00577-DC-DTG |
| Plaintiff, | § § | |
| v. | § § | |
| META PLATFORMS, INC., INSTAGRAM, LLC, and WHATSAPP LLC, | § § § § | |
| Defendants. | § § § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM [FED. R. CIV. P. 12(b)(6)]**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT............................................................................................................... 1

     A.    The '003 Patent. .......................................................................................... 4

     B.    The '796 and '650 Patents. ......................................................................... 6

     C.    Leave to Amend Should Not Be Granted. .................................................... 8

III.  CONCLUSION........................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apollo Energy v. Certain Underwriters at Lloyd's, London*,
387 F.Supp.3d 663 (M.D. La. 2019)................................................................................7

*Biotech v. Amgen*,
No. 22-35-GBW, 2024 WL 1299930 (D. Del. Mar. 27, 2024) ................................2

*Bot M8 v. Sony Corporation of America*,
4 F.4th 1342 (Fed. Cir. 2021) ................................................................................3

*Disc Disease Solutions v. VGH Solutions*,
888 F.3d 1256 (Fed. Cir. 2018)................................................................1, 2, 3, 4

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ................................................................................8

*Horowitz v. Yishun Chen*,
No. SACV 17-00432 AG (JCGx), 2018 WL 6219928
(C.D. Cal. May 14, 2018) ................................................................................2

*Lexington Luminance v. Service Lighting and Electrical Supplies*,
No. 3:18-CV-01074-K, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018) ...................................2

*Mullen Industries v. Meta Platforms*,
No. 1:24-cv-354-DAE, 2025 WL 326402 (W.D. Tex. Jan. 29, 2025) ................................3, 8

*Shamoon v. City of San Antonio*,
No. SA-18-CV-00718-XR, 2025 WL 1356399 (W.D. Tex. Apr. 30, 2025) ...........................3

*Swirlate IP v. Keep Truckin*,
No. 20-1283-CFC, 2021 WL 3187571 (D. Del. July 28, 2021) ................................................2

*Tanner v. Pfizer*,
No. 1:15-CV-75-HSO-JCG, 2015 WL 6133207 (S.D. Miss. Oct. 19, 2015)...........................7

*Vervain v. Micron Technology*,
No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022)...................................3

## I.   INTRODUCTION

Plaintiff's opposition confirms the fundamental deficiency of its Complaint: it has failed to sufficiently allege infringement on a limitation-by-limitation basis for any of the three asserted patents.   Plaintiff's opposition rests on the false premise that a patentee can plead direct infringement under *Iqbal/Twombly* by simply identifying accused functionality and including a conclusory allegation of infringement, without any allegations tying the accused products to the limitations of the asserted claims.   But the law requires that Plaintiff provide facts that plausibly allege that the accused products meet each claim limitation, which Plaintiff has failed to do.

For the '003 patent, the Complaint makes no attempt to identify how the other individuals recited in claim 1 can perform the claimed friends-of-a-friend function within Meta Horizon (or any other Meta product).   For the '796 and '650 patents, the Complaint does not plausibly allege the "user-viewable display of a social network" required by claim 1 of both patents.   Plaintiff's opposition attempts to fill these gaps by pointing to allegations directed to entirely different claim limitations, and in some cases, different patents altogether.   This only makes matters worse, as it leaves Defendants to guess as to what accused feature, if any, purportedly satisfies the claim limitations.   Defendants' motion to dismiss should therefore be granted.

## II.   ARGUMENT

Plaintiffs' opposition rests on the false assertion that a patentee can plead direct infringement under *Iqbal/Twombly* by merely identifying the accused functionality and providing a conclusory allegation of infringement, without describing the alleged infringement on a limitation-by-limitation basis.   Plaintiff's argument relies on a misapplication of *Disc Disease Solutions v. VGH Solutions*, 888 F.3d 1256 (Fed. Cir. 2018) ("*Disc Disease*"), which is readily distinguishable and does not apply here.

*Disc Disease* involved patents directed to a back brace that can be inflated to relieve back pain. *Disc Disease*, 888 F.3d at 1257-58. In finding the allegations of infringement in that case sufficient under *Iqbal/Twombly*, the Federal Circuit emphasized that "[t]his case involves a simple technology." *Id.* at 1260. The complaint in that case identified the three accused products by name and included pictures of the product packaging, and the court found that this was sufficient to give the defendant fair notice of the claim of infringement. *Id.*

*Disc Disease* stands for the unremarkable proposition that less detail may be required to provide fair notice to a defendant under *Iqbal/Twombly* when the case involves simple technologies and straightforward theories of infringement. As one court noted, *Disc Disease* "doesn't set a floor for the level of detail required to plead direct patent infringement. It's simply one example where pleadings were sufficient." *Horowitz v. Yishun Chen*, No. SACV 17-00432 AG (JCGx), 2018 WL 6219928, at *3 (C.D. Cal. May 14, 2018) (dismissing allegations of direct infringement for failure to plead sufficient facts for each claim limitation).[1] This is further supported by the several Western District of Texas cases cited in Defendants' opening brief – all decided after *Disc Disease* – confirming that a viable claim of infringement requires "facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."

---

[1] District courts have repeatedly recognized the limited nature of the holding in *Disc Disease*. *See also, e.g.*, *Lexington Luminance v. Service Lighting and Electrical Supplies*, No. 3:18-CV-01074-K, 2018 WL 10425908, at *1 (N.D. Tex. Oct. 9, 2018) ("The holding in *Disc Disease Solutions* appears to be limited to similar circumstances, where considering the technology at issue, the complexity level of the asserted claims, and the nature of the accused devices, simple pleadings supported by photographs may be sufficient to meet the standards of *Twombly* and *Iqbal*."); *Swirlate IP v. Keep Truckin*, No. 20-1283-CFC, 2021 WL 3187571, at *2 (D. Del. July 28, 2021) ("In contrast to *Disc Disease*, however, this case does not involve a simple technology, and such assertions are not sufficient" because the complaint "does not allege how [defendant's] accused product performs the steps of the claim elements."); *Biotech v. Amgen*, No. 22-35-GBW, 2024 WL 1299930, at *3 (D. Del. Mar. 27, 2024) (distinguishing *Disc Disease*, noting that "in cases that do not involve such 'simple technology,' a plaintiff 'must [ ] do more than assert that the product infringes the claim.'") (citation omitted).

*Mullen Industries v. Meta Platforms*, No. 1:24-cv-354-DAE, 2025 WL 326402, at *3 (W.D. Tex. Jan. 29, 2025); *see also* Dkt. 25 (Opening Br.), at 2 (citing cases).

As the Federal Circuit explained in *Bot M8 v. Sony Corporation of America*, 4 F.4th 1342 (Fed. Cir. 2021), also decided after *Disc Disease*, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353. As applied to this case, the factors in *Bot M8* mandate far more detail than was deemed sufficient in *Disc Disease*. *See Shamoon v. City of San Antonio*, No. SA-18-CV-00718-XR, 2025 WL 1356399, at *6 (W.D. Tex. Apr. 30, 2025) ("*Disc Disease* involved a 'simple' mechanical patent and device, unlike the [patent-in-suit] which contains software-based claims that require greater factual detail."); *Vervain v. Micron Technology*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *4-5 (W.D. Tex. Jan. 3, 2022) (holding that *Disc Disease* did not apply to claims for using software and firmware for solid state memory).

The accused products here are not analogous to the simple mechanical products with readily identifiable physical components at issue in *Disc Disease*. The Complaint defines the "Accused Functionalities" for each patent as "one or more online platforms that perform or are capable of performing at least Claim 1" of each patent, "literally or under the doctrine of equivalents" (¶¶ 50, 74, 96),[2] a hopelessly circular definition that amounts to nothing more than identifying the accused products as "products that infringe." The Complaint further clouds this hopelessly vague identification by stating that the accused products are "illustrative and not intended to be exhaustive," and that "the identified components and functionalities are representative of all components and functionalities present in each Accused Functionality and

---

[2] Citations to "(¶___)" refer to numbered paragraphs of the Complaint.

each Accused Platform." (¶ 52 n.1.) The Complaint, in other words, appears to claim that the "Accused Functionalities" include every aspect of every product offered by Defendants. This open-ended identification of accused products stands in stark contrast to the clear identification in *Disc Disease*, in which "[t]he complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits." 888 F.3d at 1260.

And unlike the simple back brace devices in *Disc Disease*, Meta's accused platforms include countless complex interacting systems, subsystems, features and user interfaces, which are available through multiple different applications including Facebook, Instagram, Messenger, Threads, WhatsApp, and Meta Horizon. In light of the broad scope and complexity of accused products, therefore, *Iqbal* and *Twombly* require that Plaintiff provide more than conclusory allegations of infringement. In order to provide "fair notice of infringement of the asserted patents," *Disc Disease*, 888 F.3d at 1260, Plaintiff must provide plausible allegations for each claim limitation. Because the Complaint here fails to do so, it should be dismissed.

A.      The '003 Patent.

The '003 patent provides a clear illustration of why the Complaint fails to provide Defendants with fair notice of the alleged infringement. Plaintiff does not dispute that the Complaint provides no explanation as to how Defendants practice the friends-of-a-friend requirement of claim 1. Plaintiff instead asserts that "a person of ordinary skill in the art" would somehow be able to figure out how the alleged infringement of this limitation occurs because, according to Plaintiff, "identifying the friends of another user through that user's profile is a well-known feature of Meta's social platforms at the time of the Complaint." (Dkt. 36, at 6.)

But this argument ignores the plain language of claim 1, which does not simply require the abstract capability to have "friends-of-a-friend" on a digital social network. The claim limitation

4

at issue requires that "**the other individuals are enabled to identify friends of a friend from the first digital social network in the second digital social network**." The "other individuals" recited in this claim limitation are not generic users of any digital social network, but rather, a narrowly defined subset of users identified based on specific requirements set forth earlier in the claim. More specifically, earlier limitations in claim 1 require that these "other individuals" have been "invited to participation" in a "second digital social network," which is distinct from the claimed "first digital social network." And this invitation, according to claim 1, was from "a plurality of users" who themselves provided "knowing consent" to participate in the second digital social network. (Compl., Ex. 3 ('003 patent), Claim 1.) And claim 1 does not simply recite the ability of this narrow group of "other individuals" to identify friends-of-a-friend; they must be enabled to "identify friends of a friend <u>from the first digital social network in the second digital social network</u>." (*Id.* (emphasis added).) The Complaint makes no attempt to identify how, if at all, these "other individuals" can perform this function within any accused Meta product.

The Complaint specifically points to a "Follow people you know" feature in the Meta Horizon application for these earlier claim limitations, but the Complaint makes no attempt to connect any aspect of Meta Horizon to the claimed friends-of-a-friend feature. (¶¶ 102-105.) Plaintiff's opposition suggests that the Facebook graph figure discussed in the Complaint – which predates the existence of Meta Horizon by more than six years – somehow supports its allegations for the claimed friends-of-a-friend feature. But the Complaint does not explain how that figure has anything to do with Meta Horizon or any feature of that application.

Plaintiff asserts that the graph figure cited in the Complaint is relevant to the friends-of-a-friend feature because it provides "evidence of the underlying graph architecture that Meta has used to represent and store social relationships across its platforms." (Dkt. 36, at 6.) But the

claim does not recite an "underlying graph architecture." It recites a highly specific user-facing feature that must be made available to the claimed "other individuals," which the Complaint identifies with reference to Meta Horizon. (¶¶ 102-104.) The Complaint does not identify any feature in Meta Horizon (or any other Meta product) that provides the claimed friends-of-a-friend feature.

Finally, Plaintiff provides a string cite of five other paragraphs from the Complaint to support its arguments about the friends-of-a-friend feature of the '003 patent. (Dkt. 36, at 6 (citing Dkt. 1, ¶¶ 61, 62, 82, 84, 85).) But this citation only further emphasizes Plaintiff's failure to provide fair notice as these paragraphs contain allegations for the <u>other two</u> asserted patents ('796/'650), which have different claim language and different accused functionalities that have nothing to do with Meta Horizon. Even if those paragraphs were relevant to Plaintiff's allegations for the '003 patent (they are not), they likewise do not identify any feature for performing the friends-of-a-friend feature claimed by the '003 patent. Plaintiff's claim of direct infringement of the '003 patent should therefore be dismissed.

### B.      The '796 and '650 Patents.

Defendants' opening brief explained that, as to both of these patents, the Complaint does not plausibly allege the claimed "**user-viewable display of a social network**" required by claim 1. Plaintiff's opposition attempts to stitch together the missing allegations by pointing to other paragraphs of the Complaint, but those other paragraphs are directed to other claim limitations – and in some cases, completely different patents.

For example, Plaintiff's opposition for the first time cites the "Follow people you know" feature from Meta Horizon discussed above, for the claimed user-viewable display. (Dkt. 36, 7-8.) This further highlights the deficiencies because the Complaint does not make any allegations against Meta Horizon for the '796 and '650 patents, or otherwise suggest that Meta Horizon is

even relevant to these two patents. Meta Horizon is not even mentioned in the Complaint until the infringement allegations for the '003 patent in Paragraph 102, which appear after the infringement allegations for the '796 and '650 patents have concluded. (¶ 102.) Plaintiff's attempts to rewrite its infringement allegations for the '796 and '650 patents through its opposition brief are improper and should be rejected. *See, e.g., Tanner v. Pfizer*, No. 1:15-CV-75-HSO-JCG, 2015 WL 6133207, at *4 (S.D. Miss. Oct. 19, 2015) ("[N]ew factual allegations presented in a plaintiff's opposition to a motion to dismiss… are insufficient to cure deficient allegations in a complaint."); *Apollo Energy v. Certain Underwriters at Lloyd's, London*, 387 F.Supp.3d 663, 677-78 (M.D. La. 2019) ("[A] motion to dismiss is evaluated on the operative complaint, not a plaintiff's opposition.") (citing cases).

Plaintiff attempts to justify its attempted revision of its Complaint by arguing that "the Complaint identifies the same accused systems" for all three patents, which according to Plaintiff include "Facebook, Instagram, Threads, WhatsApp, and Meta Horizon." (Dkt. 36, at 6-7.) But Plaintiff's attempt to stretch (and belatedly rewrite) its infringement claims to cover everything and anything on Meta's platforms has only confirmed that the Complaint does not provide fair notice of the alleged infringement. As noted, nothing in the Complaint suggests that Meta Horizon is relevant to the alleged infringement of the '796 and '650 patents.

Plaintiff also does not dispute that the Complaint relied on a figure from a 2017 Facebook engineering white paper for the "user-viewable display" limitation, notwithstanding that the figure provided no detail about what (if anything) was displayed to the user. (Dkt. 25 (Opening Br.), 5-6.) Plaintiff responds that the Complaint "does not rely on this diagram alone," but includes "the other screenshots and descriptions discussed previously of Meta platforms' user interfaces showing friend lists, relationship profiles, and other graphical displays through which users view

the relationships within their social network." (Dkt. 36, at 9.) But the Complaint does not tie these "other screenshots and descriptions" to the "user-viewable display" of claim 1. Defendants should not be forced to guess as to which of these "other screenshots and descriptions," if any, Plaintiff intends to rely upon to allege infringement of the user-viewable display limitation.

## C. Leave to Amend Should Not Be Granted.

Plaintiff's cursory request for leave to provide an unspecified amendment should be denied because it fails to advise the Court as to how, if at all, any proposed amendment might cure the deficiencies. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant "fail[s] to apprise the district court of the facts that [it] would plead in an amended complaint, if necessary, to cure any deficiencies") (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)); *see also Mullen*, 2025 WL 326402, at *4-6 (denying plaintiff's request for leave to amend where plaintiff "failed to provide the Court with additional facts it would plead to cure the defects identified").

## III. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: March 26, 2026

Respectfully submitted,

By: */s/ Heidi L. Keefe*

Heidi L. Keefe
Mark R. Weinstein
Dena Chen
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5001
hkeefe@cooley.com
mweinstein@cooley.com
dchen@cooley.com

8

Phillip Morton
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 7000
Washington, DC 20004-2400
Telephone: (202) 728-7055
pmorton@cooley.com

*Counsel for Defendants Meta Platforms, Inc.,
Instagram, LLC, and WhatsApp LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on , all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ Heidi L. Keefe
Heidi L. Keefe